UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

FORTY NINER TRUCK PLAZA, INC.,

        Plaintiff,

  v.

ROGER SHANK, CPA.

        Defendant.
_____/

NO. CIV. S-11-0860 FCD/DAD

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter comes before the court on defendant Roger Shank's ("Shank") motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff Forty Niner Truck Plaza, Inc. ("Forty Niner") opposes the motion, asserting that this court has specific personal jurisdiction over Shank. For the reasons set

/////
/////
/////

forth below,[1] Shank's motion to dismiss for lack of personal jurisdiction is DENIED.

**BACKGROUND**

Plaintiff Forty Niner is a Nevada corporation with its principal place of business in California. (Ex. 1, State Ct. Compl. ("Compl."), [Docket #1-1], filed Mar. 30, 2011, ¶ 1; Def's Reply in Supp. of Mot. to Dismiss ("Reply"), [Docket #22], filed Jun. 17, 2011, at 4). Forty Niner does business exclusively in California, and its primary business is operating a commercial truck stop plaza in Natomas, Sacramento County, California. (Compl. ¶ 1). Defendant Shank is a resident of Ohio and a licensed certified public accountant whose principal place of business is in Mansfield, Ohio. (Ex. 1, Aff. of Roger Shank ("Shank Aff."), [Docket #6-1], filed Apr. 5, 2011, ¶¶ 3, 9). Shank does not maintain offices in California, employ individuals or agents in California, or direct advertising towards California. (Id. ¶¶ 13-14, 16).

In the early 1990s, Forty Niner sought out Shank in order to retain an accountant for its truck stop plaza in California. (Id. ¶ 10). Shank then traveled to California to meet with Forty Niner's owner to discuss the accounting services he could provide and the terms of his employment. (Decl. of Terry Rust ("Rust Decl."), [Docket #19], filed Jun. 10, 2011, ¶ 6). Forty Niner hired Shank, and their agreement was controlled by an oral contract where Forty Niner compensated Shank based on an hourly

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

2

1  rate.  (Compl. ¶¶ 6-7).  Shank also traveled to California in
2  2009 to act as an intermediary for a business transaction Forty
3  Niner was conducting as well as to handle the accounting for said
4  transaction.  (Rust Decl. ¶ 6).
5       Shank performed services for Forty Niner that included
6  providing: all tax preparation services, payroll services,
7  inventory control and coding, business advice, maintenance of
8  Forty Niner's general ledger, and monthly financial reports.
9  (Id. ¶¶ 7, 9).  Shank received all accounting information from
10 Forty Niner via e-mail, facsimile, or internet based web portal.
11 (Shank Aff. ¶ 21).
12      Shank rendered all accounting services for Forty Niner at
13 his Ohio office, and Forty Niner was Shank's only client in
14 California.  (Id. ¶¶ 11, 22).  While employed by Forty Niner,
15 Shank did not conduct public accounting activity within
16 California or seek a license or permit to conduct public
17 accounting activity in California.  (Id. ¶¶ 18-20).
18      In the spring of 2010, Forty Niner concluded its business
19 relationship with Shank due to alleged professional negligence
20 committed by Shank.  (Compl. ¶ 8).
21      On January 27, 2011, Forty Niner filed a complaint against
22 Shank in the Superior Court of the State of California, County of
23 Sacramento, asserting claims for professional negligence, breach
24 of fiduciary duty, and breach of oral contract.  (Compl. ¶¶
25 11-19).  On March 30, 2011, Shank removed the case to this court
26 on the basis of diversity jurisdiction.
27 /////
28 /////

**ANALYSIS**

Defendant Shank moves to dismiss plaintiff's complaint on the basis that this court lacks personal jurisdiction over him. Forty Niner argues that this court has specific jurisdiction over Shank. Specifically, plaintiff asserts that defendant's performance of accounting services for a California business satisfy the minimum contacts necessary for specific personal jurisdiction.[2]

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may seek dismissal of an action for lack of personal jurisdiction. "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1484 (9th Cir. 1993) (citation omitted). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." Id. at 1484 (citation omitted). Thus, only constitutional principles constrain the jurisdiction of a federal court in California. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). "Due process requires that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of suit does not offend traditional notions of

---

[2] Alternatively, Forty Niner asserts that Shank is subject California's jurisdiction based on Cal. Bus. & Prof. Code Sections 5050, 5096.12. The court does not reach the merits of this assertion because, for the reasons set forth *infra*, the court finds that it has specific jurisdiction over Shank based upon his contacts with California.

4

fair play and substantial justice." <u>Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1129 (9th Cir. 2003) (internal quotations omitted); <u>see</u> <u>Burger King v. Rudzewciz</u>, 471 U.S. 462, 476 (1985).

Once a defendant challenges jurisdiction, the burden of proof to show that jurisdiction is appropriate lies with the plaintiff. <u>Sher</u>, 911 F.2d at 1361. When a defendant's motion to dismiss is to be decided on the pleadings, affidavits, and discovery materials, the plaintiff need only make a prima facie showing that personal jurisdiction exists in order for the action to proceed. <u>Id.</u>

A court may exercise either general or specific jurisdiction over a non-resident defendant.[3] Where general jurisdiction does not exist, the court may still determine whether the defendant has had sufficient minimum contacts with the state, as it relates to the pending litigation against it, in order to justify the exercise of specific jurisdiction. <u>See</u> <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 270 (9th Cir. 1995). In determining whether a district court can exercise specific jurisdiction over

---

[3] "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414-16 (1984)). When a defendant does not reside in the forum state, the contacts must be such that the "approximate physical presence in the forum state." <u>Schwarzenegger v. Fred Martin Co.</u>, 374 F.3d 797, 801 (9th Cir. 2004) (quoting <u>Bancroft v. Masters</u>, 223 F.3d 1082, 1086 (9th Cir. 2000)). Forty Niner does not claim that Shank has sufficient contacts with California to establish general jurisdiction. (Pl.'s Opp'n [Docket #16], filed Jun. 10, 2011).

5

a defendant, the Ninth Circuit has articulated the following three-part test:

> (1) the nonresident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Core-Vent, 11 F.3d at 1485 (citation omitted).

In a specific jurisdiction inquiry, the court considers the extent of the defendant's contacts with the forum state and the relatedness of the plaintiff's suit to those contacts. Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1210 (9th Cir. 2006). "A strong showing on one axis will permit a lesser showing on another. A single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." Id. (internal citation and quotation marks omitted).

**A. Purposeful Direction/Availment**

In order to satisfy the first prong of the three-part test, Forty Niner must establish either that Shank (1) purposely availed himself of the privilege of conducting business in California; (2) purposely directed his activities at California; or (3) committed some combination thereof. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006). Purposeful direction

6

and purposeful availment require a "qualitative evaluation of the defendant's contact with the forum state in order to determine whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Harris, 328 F.3d at 1130 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)) (internal quotations omitted). The Ninth Circuit has clarified that although courts sometimes use the phrase "purposeful availment" to include both purposeful availment and direction, they are two distinct concepts. Pebble Beach Co., 453 F.3d at 1155. The purposeful availment analysis is typically used in suits sounding in contract, while the purposeful direction analysis is generally used in suits sounding in tort. Schwarzenegger, 374 F.3d at 802. In the present case, Forty Niner asserts claims sounding in both tort and contract.

**1.   Purposeful Availment**

While purposeful availment of a forum's privileges can be shown by a defendant's execution or performance of a contract in the forum, the mere existence of a contract with a party in the forum state is not enough to confer jurisdiction. Sher, 911 F.2d at 1362 (citing Burger King, 471 U.S. at 462). "Instead, [courts] must look to prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine if the defendant's contacts are *substantial* and not merely random, fortuitous, or attenuated." Id. (emphasis in original, quotations omitted).

7

In cases involving out-of-state accountant services, the Ninth Circuit has held that an accountant purposely avails himself of a forum's privileges when he engages in an *ongoing* employer-employee relationship with a forum resident. See T.M. Hylwa, M.D., Inc. v. Palka, 823 F.2d 310, 314 (9th Cir. 1987); cf. Sher, 911 F.2d at 1363 n.3 (stating that out-of-state legal representation does not establish purposeful availment of privileges in the client's state when the representation is for a single out-of-state trial). In Hylwa, the court held that it had specific personal jurisdiction over an accountant who contracted to perform accounting services in Kansas for a single California client. Hylwa, 823 F.2d at 316. The accountant provided services from his Kansas office from 1981-1984[4] and also traveled to California approximately once a year to work in the client's office. Id. at 312. When the client brought suit for claims of negligence and breach of contract, the accountant moved to dismiss for lack of personal jurisdiction. Id. The court held that there was personal jurisdiction because by contracting to provide ongoing accounting services, the accountant "deliberately created continuing obligations between himself and residents of the forum and manifestly has availed himself of the privilege of conducting business there." Id. at 314 (internal quotation omitted); see also Burger King, 471 U.S. at 476 (stating that

---

[4] The accountant in Hylwa initially worked for the California client from 1977-1981 while both parties were citizens of Kansas. However, when the client reincorporated his business in California, the accountant continued to work for him from the Kansas office. The court held that these previous relations did not affect the minimum contacts analysis. Hylwa, 823 F.2d at 314.

8

creating continuing obligations in the forum allows the defendant's activities to be shielded by the benefits and protections of the forum's laws). Thus, the court concluded that the accountant should have reasonably anticipated being hailed into court in California for claims arising out of his employment. Hylwa, 823 F.2d at 314-15.

By conducting an ongoing business relationship with a California business for nearly twenty years, Shank purposefully availed himself of the benefits of doing business in California. Similar to the accountant in Hylwa, Shank also performed ongoing accounting services for a single California client. Shank provided year-round financial services, such as providing payroll services and sending monthly financial reports to Forty Niner. He also traveled to California in the early 1990s and in 2009 in relation to business matters with Forty Niner. Moreover, Shank's business relationship with Forty Niner lasted almost twenty years, approximately fifteen years longer than that in Hylwa. Therefore, by creating continuing obligations between himself and a California business, Shank purposefully availed himself of the benefits of conducting business in California. As such, he should have reasonably expected to be hailed into a California court for litigation arising out of his relationship with Forty Niner.

**2.  Purposeful Direction**

Conduct analyzed under the purposeful direction test "generally consists of action taking place *outside* the forum that is directed at the forum." Pebble Beach Co., 453 F.3d at 1156 (citing Schwarzenegger, 374 F.3d at 802) (emphasis added). A

9

court may exercise its jurisdiction over a defendant "whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986) (internal quotation marks omitted) (citing Calder v. Jones, 465 U.S. 783, 789 (1984)).  In determining whether a defendant has purposely directed its activities at a forum, courts apply the "effects test" set forth by the Supreme Court in Calder. Core-Vent, 11 F.3d at 1485-86.  In order to satisfy this test, a plaintiff must show that the defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." Bancroft, 223 F.3d at 1087.

The Ninth Circuit has held that express aiming "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Id.  When analyzing the harm caused, the Ninth Circuit has held that when a business is incorporated in California and its principal place of business is in California, the brunt of any harm caused is felt in California. See Harris, 328 F.3d at 1131.

Shank's performance of accounting services for a California client satisfies the effects test.  Shank's rendering of accounting services was an intentional act. See Calder, 465 U.S. at 789 (holding that the researching, writing, editing, and publishing of an allegedly libelous news article was an intentional act).  Further, the rendering of accounting services

10

was expressly aimed at California.  The complaint alleges that defendant engaged in conduct that was directed at a company doing business exclusively in California.  Finally, although Forty Niner is a Nevada corporation, it does business exclusively in California; as such, the harm from Shank's alleged negligence was primarily felt in California.  Accordingly, based upon the effect his business relationship had in California, defendant should have reasonably expected to be hailed into a California court for litigation arising out of his relationship with Forty Niner.

**B.   Arising Under**

In order to satisfy the second prong of the three-part test, Forty Niner must establish that the contacts giving rise to purposeful direction are those that give rise to the current dispute.  Bancroft, 223 F.3d at 1088.  The Ninth Circuit relies "on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction."  Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995)(citation omitted).  Shank's contacts in California – namely his performance of accounting services for Forty Niner – resulted in the alleged professional negligence, breach of fiduciary duty, and breach of contract at issue in this litigation.  Therefore, the current action arises out of defendant's contacts with California.

**C.   Reasonableness**

Once the first two prongs of the effects test are established, a defendant may defeat jurisdiction only by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Core-

11

1  <u>Vent</u>, 11 F.3d at 1487; <u>Amini Innovation Corp.</u>, 497 F. Supp. 2d at
2  1108.  Specifically, a defendant must show that the exercise of
3  jurisdiction in the forum would "make litigation so gravely
4  difficult and inconvenient that a party unfairly is at a severe
5  disadvantage in comparison to his opponent." <u>Burger King</u>, 471
6  U.S. at 478 (internal quotations and citations omitted).  In
7  determining whether the exercise of specific jurisdiction is
8  reasonable, the court must weigh the following seven factors:

     (1)  the extent of the defendant['s] purposeful interjection into the forum state's affairs;
     (2)  the burden on the defendant of defending in the forum;
     (3)  the extent of conflict with the sovereignty of the defendant['s] state;
     (4)  the forum state's interest in adjudicating the dispute;
     (5)  the most efficient [forum for] judicial resolution of the controversy;
     (6)  the importance of the forum to the plaintiff's interest in convenient and effective relief; and,
     (7)  the existence of an alternative forum.

16 <u>Core-Vent</u>, 11 F.3d at 1487-88 (citation omitted).  A finding of
17 purposeful direction/availment creates a presumption of
18 reasonableness in exercising jurisdiction.  See <u>Haisten</u>, 784 F.2d
19 at 1401; <u>cf.</u> <u>Data Disc, Inc. v. Sys. Tech. Assocs.</u> 557 F.2d 1280,
20 1288 (9th Cir. 1977) (noting that it may be unreasonable to
21 exercise jurisdiction where the effects in the forum state were
22 caused by defendant's negligent and not purposeful acts).
23      In this case, Shank has failed to rebut the presumption of
24 reasonableness in exercising jurisdiction.  Although Forty Niner
25 was the one who initiated the contact between the parties, Shank
26 interjected himself into California affairs by conducting an
27 ongoing business relationship with a California business for
28 nearly twenty years.  See <u>Hylwa</u>, 823 F.2d at 315 (finding that an

12

1 accountant purposely interjected himself into California affairs
2 by choosing to maintain a four-year employer-employee
3 relationship with a California corporation).  While the courts of
4 Ohio exist as an alternative forum, California has a strong
5 interest in adjudicating professional negligence cases where its
6 residents are tortiously injured.  See Sinatra v. National
7 Enquirer, 854 F.2d 1191, 1200 (9th Cir. 1988).  Further, while
8 defendant asserts that litigation in California would impose a
9 burden on his ability to conduct his business in Ohio and that
10 more evidence and witnesses are located in Ohio, these factors
11 are not dispositive and do not sufficiently outweigh the
12 previously mentioned factors.  See Dole Food Co. v Watts, 303
13 F.3d 1104, 1115 (9th Cir. 2002); see also CE Distrub., LLC v.
14 News Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004) ("[W]ith
15 the advances in transportation and telecommunications and the
16 increasing interstate practice of law, any burden is
17 substantially less than in days past.").  Therefore, on balance,
18 the court concludes that the exercise of specific jurisdiction
19 over Shank is reasonable and within "traditional notions of fair
20 play and substantial justice."  See Harris, 328 F.3d at 1129.

**CONCLUSION**

22    Accordingly, for the foregoing reasons, the court finds that
23 it has specific jurisdiction over Shank.  Therefore, Shank's
24 motion to dismiss Forty Niner's Complaint for lack of personal
25 jurisdiction is DENIED.
26 /////
27 /////
28 /////

1     IT IS SO ORDERED.
2  DATED: July 8, 2011.

                                    _____
                                    FRANK C. DAMRELL, JR.
                                    UNITED STATES DISTRICT JUDGE